UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB -4 P 4: 04

05 10236 RWZ

US DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| BIOGEN IDEC INC. and SABINE HARNING, | ) ) ) ) |  |
| Plaintiffs v. | ) ) ) | Case No. _____ |
| PAUL E. NOVAK, Center Director Vermont Service Center, EDUARDO AGUIRRE JR., Director U.S. Citizenship And Immigration Service, and THOMAS RIDGE, Secretary, U.S. Department of Homeland Security, | ) ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

**MEMORANDUM IN SUPPORT OF MOTION OF BIOGEN IDEC INC. AND SABINE HARNING FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiffs, Biogen Idec Inc. ("Biogen Idec") and Sabine Harning, seek a preliminary injunction ordering the United States Citizenship and Immigration Service ("USCIS") and the Department of Homeland Security ("Department") to take no further action with respect to Ms. Harning's immigration status pending the outcome of this proceeding and to refrain from deportation proceedings, and to permit Ms. Harning to continue her employment with Biogen Idec. Ms. Harning is out of immigration status, deportable, ineligible for certain important immigration benefits, and unable to continue her employment with Biogen Idec because the USCIS issued a decision that was arbitrary, capricious, inconsistent with the Immigration and Naturalization Act ("INA"), the INA's implementing regulations, and the USCIS's own forms and is contrary to the

USCIS's own long standing custom and practice. Because Plaintiffs are likely to succeed on the merits and face substantial irreparable harm, they are entitled to preliminary injunctive relief.

## FACTUAL BACKGROUND

### Sabine Harning

Sabine Harning is a German citizen and a pharmacist by training who has been living and working in the United States pursuant to a valid L-1 visa petition and then a valid H-1B visa petition since 1998. (Verf. Compl. ¶¶ 1, 8). Ms. Harning earned the equivalent of a Bachelor's degree in Pharmacy and a Bachelor's degree in Business Administration at Pforzheim School of Business and Commerce in Pforzheim, Germany. (Id. ¶ 9). She began her career as a retail pharmacist in 1988. (Id. ¶ 10). In 1991, she began to work in the pharmaceutical industry in marketing and product management, first for Pfizer GmbH in Karlsruhe, Germany and later for Schwarz Pharma AG in Monheim, Germany. (Id. ¶). In 1998 Ms. Harning entered the U.S. on a valid L-1 visa petition and began to work for Schwarz Pharma, Inc. in Milwaukee, Wisconsin as Product Manager of certain pharmaceutical products.[1] (Id. ¶ 11).

Biogen Idec is a biotechnology company engaged in the development, manufacture and marketing of drugs for human health through genetic engineering. (Ver. Compl. ¶¶ 2, 16). In July of 2002, in order to permit Ms. Harning to begin employment at Biogen Idec, Biogen Idec[2] petitioned the then Immigration and Naturalization Service, now the

---

[1] An L-1 visa classification, issued pursuant to 8 U.S.C. § 1101(a)(15)(L), permits foreign citizens to work in the United States as intracompany transferees.

[2] The original petitioner was Biogen, Inc. Biogen Idec was formed by the merger of Biogen, Inc. and IDEC Pharmaceuticals Corporation in November 2003. (Ver. Compl. ¶ 16).

USCIS, to change Ms. Harning's visa status from L-1A to H-1B.[3] (Id. ¶ 13). That petition was granted by the USCIS (then the Immigration and Naturalization Service) on August 9, 2002, and Ms. Harning was permitted to remain in the United States in the H-1B visa classification from August 9, 2002 through November 1, 2004. (Id.).

Since August of 2002, Ms. Harning has worked in the marketing group for Biogen Idec in Cambridge Massachusetts. (Ver. Compl. ¶ 15). Her present position is Senior Marketing Manager. (Id.).

Since 1998 when she first entered the country on a valid L-1 visa petition, through November of 2004, which was the stated end date of Biogen Idec's H-1B visa petition, Ms. Harning has spent at least 95 days outside the United States. (Ver. Compl. ¶ 24). Thus, on February 4, 2005 will Ms. Harning have spent 6 years in the United States pursuant to valid L-1A and H-1B visa petitions.[4]

### Biogen Idec's Petitions

The INA provides that the period of "authorized admission" of an alien pursuant to the H-1B visa classification "may not exceed 6 years" ("six-year statutory period"). 8 U.S.C. § 1184(g)(4). The six-year statutory period under the H-1B visa petition does not apply, however, to an individual who has started the process of applying for permanent residence prior to the fifth anniversary of allowable H-1B time. Specifically, section 106 of the American Competitiveness in the Twenty-First Century Act of 2000 ("AC-21"), as amended, exempts from the six-year limit an individual in H-1B status if 365 days or more have elapsed since the filing of a labor certification application for that individual,

---

[3] An H-1B visa classification, issued pursuant to 8 U.S.C. § 1101(a)(15)(H), "allows skilled aliens in certain occupations to work in the United States for a limited time, under specified conditions." Evangelical Lutheran Church in America v. INS, 288 F. Supp.2d 32, 35 (D.D.C. 2003)

[4] Time Ms. Harning spent in the United States pursuant to her valid L-1A visa petition is included in the 6-year statutory period for H-1B status. 8 C.F.R. § 214.2(h)(13)(i)(B) and (iii)(A).

where a labor certification is required or used by the individual to obtain permanent residence through his or her employment. See 21st Century Dep't of Justice Appropriations Authorization Act, Pub. L. No.107-273, §11030A, 116 Stat. 1758 (2002) (amending American Competitiveness in the 21st Century Act of 2000, Pub. L. No. 106-313, §106, 114 Stat. 1251 (2000)).

The fifth year anniversary of Ms. Harning's allowable H-1B time, including the 95 days that she spent outside the country, occurred on February 4, 2004. On December 22, 2003 Biogen Idec started the process of applying for Ms. Harning's permanent residence by filing a labor certification application on her behalf for the position of Marketing Manager. (Ver. Compl. ¶ 26). If Ms. Harning's combined L-1A/H-1B authorized admission includes only the time that she actually spent in the United States, then the filing of this labor certification application will entitle Biogen Idec and Ms. Harning to annual extensions of the Company's H-1B petition and her H-1B status beyond the six-year statutory period until a decision on her permanent residence application is made. (Id.).

On October 25, 2004, Biogen Idec filed on behalf of Ms. Harning the first of the two petitions at issue in this case ("October 2004 Petition"). The October 2004 Petition, an H-1B nonimmigrant visa petition and request for extension of stay, requested that the USCIS extend Ms. Harning's stay for 95 days – the amount of time that she was not in the United States – from November 2, 2004 to February 4, 2005. As noted, only with the 95-day extension will Ms. Harning have had a period of combined L-1A/H-1B authorized admission in the United States of six years. (Ver. Compl. ¶ 25).

On December 22, 2004 – 365 days after the filing of its labor certification application for Ms. Harning – Biogen Idec filed the second petition at issue in this case, another H-1B nonimmigrant visa petition and request for extension of stay on behalf of Ms. Harning ("December 2004 Petition"). Because Biogen Idec had filed the labor certification application on behalf of Ms. Harning, and began the process for Ms. Harning to obtain permanent residency, the December 2004 Petition seeks a seventh year of H-1B status for Ms. Harning under the provisions of AC-21. That petition is pending at the Vermont Service Center and has not been adjudicated. (Ver. Compl. ¶ 27).[5]

### The USCIS Decision

On December 29, 2004 Defendant Paul Novak, the Director of the Vermont Service Center, denied Biogen Idec's October 2004 Petition, refusing Biogen Idec's request to extend Ms. Harning's H-1B status for 95 days and stating that "brief trips abroad for vacation or business are not considered breaks in employment and do count against the six-year H1B limit." (Ver. Compl., Ex. B). That decision is contrary to prior determinations made by the USCIS, at the Vermont Service Center and other Service Centers, in which the USCIS has permitted nonimmigrant aliens to recapture time spent outside of the United States on brief trips for vacation or business during the validity of an H-1B visa petition. (Ver. Compl. ¶ 28 ).

### ARGUMENT

I.  **This Court Has the Authority to Review the USCIS Decision and Issue A Preliminary Injunction to Preserve the Status Quo.**

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., provides that "[a] person suffering legal wrong because of agency action, or adversely affected or

---

[5] If the October 2004 Petition is granted *nunc pro tunc*, the December 2004 Petition will be ripe for action and must be granted in accordance with the terms of AC-21. The Plaintiffs seek as well in the Complaint an order in the form of a writ of mandamus directed to the USCIS granting the December 2004 Petition.

aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA also provides that this Court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. §706(2)(A). The APA specifically permits this Court the authority, to prevent irreparable injury, to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." Id. § 705.[6]

Plaintiffs have suffered a legal wrong as a result of the USCIS decision that, as will be demonstrated below, was arbitrary, capricious and not in accordance with law. Plaintiffs require a preliminary injunction to stay the USCIS decision, preserve the status quo and avoid substantial irreparable harm.

## II.     Biogen Idec and Sabine Harning Are Entitled to A Preliminary Injunction.

To obtain a preliminary injunction, Biogen Idec and Ms. Harning must show:

> (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or at least a lack of friction) between the injunction and the public interest.

Equal Opportunity Comm'n v. Astra USA, Inc., 94 F.3d 738, 742 (1st Cir. 1996); see also Jackson v. Fair, 846 F.2d 811, 814-815 (1st Cir. 1988); Shipley Company L.L.C. v. Kozlowski, 926 F. Supp. 28, 29 (D. Mass. 1996). As established below, each of these four elements weighs decidedly in favor of granting Biogen Idec and Ms. Harning's motion for injunctive relief.

---

[6] The decision of Defendant Novak is final for purposes of review under the APA, see 5 U.S.C. § 704, and Plaintiffs are not required to pursue any further administrative relief. See generally, Darby v. Cisneros, 509 U.S. 137 (1993).

### A.     Plaintiffs Are Likely to Succeed on the Merits.

The USCIS refusal to permit Biogen Idec and Ms. Harning to recapture time spent outside the United States and allow her to complete a full six years in the United States in H-1B status conflicts with the plain reading of the INA, its implementing regulations, and the USCIS's own forms which have the force of regulation. It is also inconsistent with prior practice of the USCIS. In addition, Plaintiffs have located only two cases in which federal district courts have considered refusals by the USCIS to recapture time spent outside the United States for persons with H-1B visa petitions to complete a full six years of authorized admission and both found that the USCIS decision was arbitrary and capricious and not in accordance with law.

#### 1.     The INA and its regulations plainly include only time actually spent in the United States.

The INA, its regulations and USCIS forms make clear that only time spent "actually in the U.S." may be used to calculate the six-year statutory period. The INA provides that the period of "authorized admission" of an alien pursuant to the H-1B visa classification "may not exceed 6 years" ("six-year statutory period"). 8 U.S.C.A. § 1184(g)(4). The INA's implementing regulations provide that only time spent "in the United States" is used to calculate the six-year statutory period. 8 C.F.R. 214.2(h)(13)(iii)(A) ("An H-1B alien in a specialty occupation . . . who has *spent six years in the United States* under section 101(a)(15)(H) and/or (L) of the Act may not seek extension . . . .") (emphasis supplied).

"Any analysis of the meaning of a statutory provision must begin with 'the language of the statute itself.'" <u>Allende v. Schultz</u>, 845 F.2d 1111, 1116 (1st Cir. 1988) (<u>citing</u> <u>United States v. James</u>, 478 U.S. 597, 106 S.Ct. 3116, 3121 (1986)). "The words must be

-7-

given their ordinary meaning, which are assumed to express the underlying legislative purpose." Id. (internal quotation and citation omitted).

Here, the INA states that the period of "authorized admission" may not exceed six years, and 8 C.F.R. 214.2(h)(13)(iii)(A) states that time "in" the United States counts toward the six-year statutory period. Had Congress intended to limit H-1B status to a total of six years, regardless of whether the nonimmigrant alien was physically present in the United States, it could have done so simply by limiting the H-1B status period to six years without any carve-out or clarification. It did not. It limited H-1 B status to six years of "authorized admission" and the regulation clarifies that means six years "in the United States."

Other federal district courts confronted with the same issue have found the INA and its regulations to be unambiguous. In Ramirez v. Poulos, No. 02-1811-ER, 2002 WL 31888286 (C.D. Cal. Dec. 13, 2002), the court considered whether time spent outside the United States should be included when calculating the six-year statutory period of admission in H-1B status. The court reviewed the language of the INA and 8 C.F.R. 214.2(h)(13)(iii)(A) and held that both "compel the conclusion that the six-year period only includes time spent physically present in the United States." 2002 WL 31888286 at *4.

Indeed, in reviewing the INA, the Ramirez Court determined that the meaning of the term "authorized admission" in 8 U.S.C. § 1184(g)(4) is "clear." The Court noted that 8 U.S.C. § 1101(a)(13)(A) defines "admission" with respect to an alien as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 2002 WL 31888286 at *4. The Court concluded that every time the plaintiff

US1DOCS 4951460v1

alien "left the United States, he entered the United States lawfully after inspection and authorization by an immigration officer. *When he was outside the United States, he was not in any status at all under the United States immigration laws.* Only when he entered the country was he a nonimmigrant with authorized *admission*." Id. (emphasis added).

Likewise, in Nair v. Coultice, 162 F. Supp.2d 1209 (S.D. Cal. 2001), also involving the issue whether time spent outside the United States should count toward the six-year statutory period of authorized admission under H-1B status, the Court held that the INS's position, to include time spent outside the United States in the six-year statutory period, "appears to conflict with the INS' own regulations." 162 F. Supp.2d at 1211. The Nair Court held that the plain language of the applicable regulation -- that an alien "*who has spent six years in the United States* . . . may not seek extension " -- "would compel the conclusion that the six-year period only includes time spent physically present in the United States." Id. (citing to 8 C.F.R. § 214.2(a)(h)(13(iii)) (emphasis in original).

Moreover, USCIS Form I-129 and its instructions, the form used to request extensions of H visa petitions, have the force of regulations. See 8 C.F.R. § 103.2(a)(1) ("Every application, petition, appeal, motion, request, or other document submitted on the form prescribed by this chapter shall be executed and filed in accordance with the instructions on the form, such instructions (including where an application or petition should be filed) being hereby incorporated into the particular section of the regulations in this chapter requiring its submission"); 8 C.F.R. § 103.2 (b)(1) ("An application or petition form must be completed as applicable and filed with any initial evidence required by regulation or by the instructions on the form.")

Here, the H supplement to USCIS Form I-129, which must be completed when a petition is made to extend the H-1B classification, instructs the petitioners, in calculating the period of stay permitted in the H visa classification, to "list only those periods in which the alien and /or family members were *actually in the U.S. on H classification.*" (See Compl., Ex. A). Plaintiffs were required by regulation to complete Form 1-129 "in accordance with its instructions," and thus were required to list only the time Ms. Harning spent "actually" in the U.S as time to be counted toward the six year statutory period.

2. **The USCIS has and continues to permit aliens to recapture time spent outside the United States to complete a full six years in the United States in H-1B status.**

The USCIS has, in accordance with the law and its own instructions, permitted aliens to recapture time spent outside the country and complete a full six years in H-1B status in the United States. (Ver. Compl. ¶ 31). Indeed, both the Nair and the Ramirez courts noted that the USCIS has tolled an alien's six-year statutory period during absences from the United States. See Nair, 162 F. Supp.2d at 1210 ("Here, defendants do not deny that in the past the INS has tolled the six-year period during an alien's absence."); Ramirez, 2002 WL 31888286 at *2.[7]

3. **Biogen Idec and Ms. Harning have a substantial likelihood of obtaining the ultimate relief they seek.**

In Nair, the court held that the INS unlawfully included days that the plaintiff was outside the United States when calculating the six-year statutory H-1B period. Nair, 162 F. Supp.2d at 1211. Accordingly, the Court granted the plaintiff *nunc pro tunc* an extension of stay and eligibility for employment as an H-1B temporary worker. Id. at

---

[7] The Ramirez court also held that the USCIS reliance on an internally generated memorandum was insufficient to circumvent the plain language of the INA and the USCIS's own regulation interpreting the INA. 2002 WL 313888286 at *2-3.

-10-

1211-12. Here, Plaintiffs seek the same relief -- a *nunc pro tunc* order extending Ms. Harning's stay and eligibility as an H-1B temporary worker.

Moreover, in Ramirez, after the Court granted summary judgment on the plaintiff's claim that the INS had unlawfully included time spent outside the United States in calculating the six-year limit for H-1B status, the Court granted the plaintiff's subsequent request for attorney's fees. The Court held that, in light of the clarity of the operative regulation and the inconsistent practice of the INS, the Government's position was not "substantially justified." 2002 WL 31888286 at *4. In deciding that the Government's position was not substantially justified, and granting attorney's fees, the Court applied Ninth Circuit law that substantial justification means having a "reasonable basis in law and fact." Id. at *1.

Given the clear language of the INA, the regulation and the USCIS's own form and the persuasive and instructive decisions in Nair and Ramirez, Biogen Idec and Ms. Harning have demonstrated a substantial likelihood of success sufficient to grant preliminary relief.

### B. Plaintiffs Face Irreparable Harm and the Balance of Hardship Favors the Plaintiffs.

As a result of the USCIS decision denying the October 2004 Petition, Ms. Harning is out of status and would be expected to leave the United States immediately. She is also deportable and ineligible for certain important immigration benefits such as the ability to file an application for adjustment of status under Section 245 of the INA. As an additional result of Mr. Novak's decision, Ms. Harning is not permitted to provide services to Biogen Idec because her permission to work in the United States is dependent on her maintaining valid H-1B status. Finally, Mr. Novak's decision has unlawfully

-11-

deprived Ms. Harning and Biogen Idec of the ability to obtain extension of Ms. Harning's H-1B visa status beyond the six-year statutory limit under AC-21. (Ver. Compl. ¶ 33).

Ms. Harning's life is thus in limbo. Biogen Idec is in limbo. Both have and will continue to suffer irreparable harm.

The harm to the Defendants from a preliminary injunction is nonexistent. A preliminary injunction simply maintains the status quo, preventing the USCIS from initiating deportation proceedings and permitting Ms. Harning to continue her employment – which she would be permitted to do had the October 2004 Petition been granted or during the time that the Petition was pending. 8 C.F.R. § 274a.12(b)(20). As Plaintiffs seek a stay of the decision of defendant Novak, the requested preliminary injunction simply puts the Plaintiffs in the position they were in prior to the issuance of the decision and preserves the status quo.

Indeed, other courts confronted with claims by nonimmigrant aliens have not hesitated to issue preliminary injunctions to preserve the status quo. See, e.g., Evangelical Lutheran Church in America v. INS, 288 F.Supp.2d 32, 38 (D.D.C. 2003) (noting that the court granted plaintiffs, who sought an extension in H-1B status despite having missed the deadline to petition for same, preliminary relief "to prevent [the INS] from taking any adverse actions against [the plaintiffs] during the pendency of the litigation.")

### C. The Public Interest Is Served By a Preliminary Injunction.

There is no friction between the Plaintiffs' request for preliminary relief and the public interest. To the contrary, the public interest is served by preserving the status quo while the Court rules on Plaintiffs' claim that the USCIS acted arbitrarily, capriciously and not in accordance with law. The alternative, requiring Biogen Idec to forgo the

services of its Senior Manager Marketing, requiring Ms. Harning to continue in limbo and not permit her to work, and / or permitting the USCIS to initiate costly and ultimately unsuccessful deportation proceedings against Ms. Harning, do not serve the public at all.

## CONCLUSION

Biogen Idec and Sabine Harning are entitled to a preliminary injunction. They are likely to succeed on the merits and face substantial irreparable harm. The Defendants will not be harmed by an injunction preserving the status quo while this action proceeds and the public interest is served by an injunction. According, Biogen Idec and Sabine Harning respectfully request that the Court enter the Proposed Order attached to the Motion for Preliminary Injunction.

Respectfully Submitted,

BIOGEN IDEC INC and
SABINE HARNING

By their Attorney,

_____
Merriann M. Panarella (BBO #388280)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

And

Philip C. Curtis (BBO# 544939)
CHIN & CURTIS, LLP
75 Federal Street
Boston, MA 02110
(617) 482-1775

Dated: February 4, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the United States Attorney for the District of Massachusetts by hand and the Defendants by mail on this ___ day of February, 2005.

_____
MERRIANN M. PANARELLA